1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND DANIEL GREEN,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:24-CV-1381-DAD-DMC<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the Court are the parties' briefs on the merits, ECF Nos. 9, 10, and 14.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Court recommends the matter be remanded for further proceedings.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

///

2

|   |   |   |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in the claimant's previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on June 25, 2021.  See CAR 22.[1]  In the application, Plaintiff claims disability began on April 21, 2004.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on March 17, 2023, before Administrative Law Judge (ALJ) Gregory Moldafsky.  In a May 30, 2023, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): degenerative disc disease of the lumbar spine with obesity;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity:  light work except the claimant can sit six hour and stand and walk four hours in an eight-hour workday; he can occasionally climb ramps and stairs; he can never climb ladders, ropes, and scaffolds; he can occasionally stoop, balance, kneel, and crouch; he can never crawl; the claimant can tolerate occasional exposure to extreme cold; he can never work at unprotected heights;
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant can perform his past relevant work as a telemarketer and trouble shooter.

See id. at 24-31.

After the Appeals Council declined review on August 3, 2023, this appeal followed.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ /

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on July 15, 2024 (ECF No. 8).

## III.  DISCUSSION

In his opening brief, Plaintiff argues: (1) the ALJ failed to include mental limitations in his residual functional capacity finding and hypothetical questions posed to the vocational expert; and (2) the ALJ failed to provide, clear, convincing, and well-supported reasons for discounting Plaintiff's statements of physical dysfunction.  See ECF No. 9.

### A.     **Mental Limitations**

Residual functional capacity is the most a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2012); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.[2]  An ALJ's RFC finding must include all of the limitations the ALJ has found to be supported by the evidence of record. See SSR 85-15.

In determining residual functional capacity, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations.  See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  Where there is a colorable claim of mental impairment, the regulations require the ALJ to follow a special procedure.  See 20 C.F.R. §§ 404.1520a(a), 416.920a(a).  The ALJ is required to record pertinent findings and rate the degree of functional loss.  See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

/ / /

---

[2]  Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

At Step 2, the ALJ concluded that Plaintiff's medically determinable mental impairments are not severe after evaluating the evidence relating to four broad functional areas known at the "paragraph B" criteria. See CAR 24-25. The ALJ specifically noted:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

CAR 25.

In determining residual functional capacity at Step 4, the ALJ addressed Plaintiff's mental health issues, as follows:

> As noted, the claimant is also treated for mental health symptoms. In December 2020, the claimant was assessed with adjustment disorder with mixed anxiety and depressed mood and prescribed venlafaxine. (Exhibit 2F, p. 20). He reported symptoms of a depressed mood, insomnia, hypersomnia, decreased energy, and decreased concentration. (Exhibit 2F, p. 21). He has also participated in psychotherapy for depression and anxiety since 2021. (Exhibit 6F). Specifically, the claimant participated in therapy and is followed with therapist, Kamilah Aua, LCSW, for adjustment disorder with mixed anxiety and depressed mood. (Exhibit 5F). In December 2021, the claimant reported symptoms of anxiety and depression and feeling as though he is on a roller coaster. He reported attending church functions, going to the gym, and spending time with his daughter, son, and grandchildren during the holidays as helpful in decreasing his symptoms. (Exhibit 6F, p. 30). As recently as June 2022, the claimant was assessed with adjustment disorder with mixed anxiety and depressed mood. (Exhibit 8F, p. 19). He is currently prescribed venlafaxine (75 mg) and he testified to experiencing depressive symptoms in the context of pain. (Exhibit 8F, p. 110). In September the claimant (completed a) normal mental status examination with the exception of fidgety behavior and frustration with medical issues. (Exhibit 9F, p. 68). The claimant reported that he had good support network, and he noted that he had applied for security guard job. (Exhibit 9F, p. 72). Later that month the claimant reported frustration and irritability because of chronic pain and financial distress. (Exhibit 9F, p. 103). The claimant reported that he was visiting family out of state in October 2022. (Exhibit 9F, p. 108). The claimant reported listening to music, using Calm app, social support of gathering with family and trying to stay busy with activities such as church events. (Exhibit 9F, p. 115). Mental status examination findings were within normal limits in November 2022. (Exhibit 9F, p. 164).

\* \* \*

///

>I find the opinions of the state agency psychological consultants persuasive insofar as the claimant has mild to no limitations due to his mental health symptoms as this is consistent with the medical records as whole, including the mental status examination findings showing some deficits in mood and affect, but otherwise normal concentration and memory skills with no deficits noted in thought process, thought content, impulse control, insight and judgment. (Exhibit 9F, p. 164). Further, this is supported by the type and degree of treatment needed, including counseling and prescribed medication (venlafaxine) as well as the claimant's own description of his activities, going to the gym, spending time with his daughter, son, and grandchildren during the holidays. (Exhibits 1A, 3A, 1F, 6F, 9F and hearing testimony).

CAR 28-30.

Plaintiff raises two arguments. First, citing Hutton v. Astrue, 491 Fed. Appx. 850 (9th Cir. 2012) (unpublished), Plaintiff contends that the ALJ erred because he did not consider Plaintiff's mild mental limitations at Step 4. See ECF No. 9, pgs. 16-17. Second, Plaintiff asserts that the ALJ failed to comply with Social Security Ruling (SSR) 96-8p which requires a more detailed assessment of mental impairments at Step 4. See id. at 19. In opposition, Defendant argues that Plaintiff's reliance on the Ninth Circuit's unpublished opinion in Hutton is misplaced and that a more recent published opinion – Woods v. Kijakazi, 32 F.4th 785 (9th Cir. 2022) – states that a finding of mild mental limitations at Step 2 does not require express findings at Step 4. See ECF No. 13, pgs. 19-20.

        1.        Applicability of *Woods*

At the outset, the Court agrees with Plaintiff that Defendant misreads Woods. "Woods primarily addresses a different question. . . and does not hold that an RFC for light work will always be adequate to address mild limitations found at Step 2, but reaffirms the principles. . . that the ALJs should be affirmed where they show their work. . . ." Diane v. Kijakazi, 2023 WL 7301969 (C.D. Cal. 2023); see also Fortunato v. O'Malley, 2024 WL 1179966, *4, n.2 (E.D. Cal. 2024) (distinguishing Woods and holding that an ALJ failed to properly discuss a claimant's mild mental impairments when formulating the RFC).

/ / /

/ / /

/ / /

7

This being said, the Court does not agree that the ALJ failed to consider Plaintiff's mild mental impairments at Step 4 when determining Plaintiff's residual functional capacity. The hearing decision reflects the opposite. Notably, at Step 4, the ALJ observed that Plaintiff was diagnosed with adjustment disorder in December 2020, and prescribed medication. The ALJ also outlined Plaintiff's treatment for mental impairments which included medication as well as psychotherapy. By November 2022, mental status examination findings were normal. The record makes clear that the ALJ considered Plaintiff's non-severe mental impairments at Step 4.

          2.        <u>Application of SSR 96-8p</u>

Plaintiff contends that the ALJ failed to follow SSR 96-8p by not including a more detailed review of Plaintiff's mental non-severe mental limitations and mild mental impairments at Step 4. SSR 98-6p provides as follows with respect to the psychiatric review technique employed throughout the sequential evaluation process:

> *The psychiatric review technique.* The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p.

Plaintiff argues:

> SSR 96-8p, moreover, instructs that the RFC finding requires a "more detailed assessment by itemizing various functions contained in the broad categories" summarized at the earlier steps of the decision (Tr. 25). In other words, an ALJ cannot simply ignore limitations he found credible at earlier steps of the decision. Yet, there was no "more detailed" analysis by the ALJ to account for Plaintiff's mild limitations in understanding, remembering, or applying information; interacting with others; concentration, persistence, and maintaining pace; and adapting and managing oneself concentrating at step four (Tr. 26-31). Although he discussed some of the medical evidence related to Plaintiff's mental impairments (Tr. 29), he did not provide a more detailed discussion of his

> own credible findings that Plaintiff was mildly limited in all four areas of mental functioning. . . .

ECF No. 9, pg. 19.

As Defendant notes, the ALJ stated that the residual functional capacity assessment at Step 4 "reflects the degree of limitations I have found in the 'paragraph B' mental functional analysis" provided at Step 2. CAR 25. Citing D.L.P. v. Kijakazi, 2022 WL 4472064, at *4-5 (N.D. Cal. 2022), Defendant acknowledges that some courts have concluded that similar incorporation-by-reference language constitutes empty boilerplate where the ALJ did not discuss or give a reasoned consideration in formulating residual functional capacity. See ECF No. 13, pg. 22. The Court finds that the ALJ's analysis in this case is not mere empty boilerplate. The ALJ provided a detailed analysis at Step 2 under the applicable psychiatric review technique. At Step 4, the ALJ then provided further analysis of Plaintiff's mental limitations, which included a discussion of medical opinion evidence, which Plaintiff does not challenge. The Court finds no error in the ALJ's incorporation by reference of the severity analysis at Step 2 when coupled with a more detailed analysis at Step 4. See Frary v. Comm'r., 2021 WL 5401495, at *19 (E.D. Cal. 2021); Jones v. Berryhill, 2018 WL 3956479, at *3 (C.D. Cal. 2018); Ball v. Colvin, 2015 WL 2345652, at *3 (C.D. Cal. 2015).

### B.   **Plaintiff's Statements**

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue,

9

504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to discount testimony of disabling pain, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .

10

does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").  Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to discount a claimant's pain testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

At Step 4, the ALJ addressed Plaintiff's subjective statements and testimony. See CAR 26-29.  The ALJ summarized Plaintiff's statements and testimony as follows:

> The claimant alleges disability due a combination of his physical and mental impairments. The claimant has a history of back pain with a fusion surgery in 2009 and his pain has persisted despite ongoing conservative treatment, including injections and pain medication. Mr. Green testified that he might also be a candidate for additional back surgery after losing weight. He also reports knee pain, and he stated that he uses a grabber to lift things. In addition, his wife assists him by tying his shoes. By written statement he indicated that he is able to sit for approximately 45 minutes at a time and stand for 20 minutes before experiencing pain that increases from a level 4 to level 7 to 8 and requires pain medication. (Exhibits 6E and 13E). Mr. Green further testified that he takes 2 to 4 Percocet a day to treat his pain, and he also uses a back brace and relies on a grabber. The claimant testified that he is also participating in therapy for mental health symptoms of depression and anxiety. He testified that his symptoms include crying spells, decreased energy and difficulties with concentration. (Hearing testimony).

CAR 27.

///

///

The ALJ then stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with or well supported by the medical evidence and other evidence in the record for the reasons explained in this decision. As noted, Mr. Green's activities include household chores, simple food preparation, reading, watching television, attending and volunteering at church, reading, watching sports on television, shopping, paying bills, attending Bible study, drives, and socializing by on the telephone, text message and video chat. (Exhibits 12E and 13E and hearing testimony). This level of activity, though not conclusive as to any issue, is consistent with the residual functional capacity as found.

CAR 27.

The ALJ summarized the longitudinal objective medical evidence of record and concluded as follows:

> Overall, the record does not support limitations that prevent the claimant from working within the residual functional capacity. Mr. Green's own description of his activities, coupled with the findings on examination as noted in detail above, demonstrate that he can perform functions within the assessed residual functional capacity. No single factor mentioned here is alone conclusive on the issue to be determined, but when viewed in combination and in conjunction with the medical history and examination findings they suggest that the claimant is not as limited as he claims. Given the claimant's back pain, I find that he is limited to a reduced range of light work with postural and environmental limitations.

CAR 29.

Plaintiff argues two points of error. See ECF No. 9, pgs. 12-14. First, Plaintiff contends that the ALJ erred with respect to Plaintiff's allegations of pain, lower extremity dysfunction, and tiredness by failing to link the evidence cited to any specific portion of Plaintiff's subjective statements and testimony. See id. at 12. Second, Plaintiff asserts that the ALJ erred in relying on Plaintiff's activities of daily living, which Plaintiff alleges do not show capabilities transferrable to full-time competitive work. See id. at 13-14.

/ / /

/ / /

/ / /

1. Link Between Evidence Cited and Plaintiff's Subjective Statements and Testimony

According to Plaintiff:

> Here, the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's allegations of pain, lower extremity dysfunction, and tiredness (Tr. 26-30). The ALJ discussed the objective evidence in the record but provided no real analysis for why he found it did not support Plaintiff's allegations (Tr. 27-28). The ALJ discussed one physical examination from Plaintiff's emergency room visit for heart abnormalities, where Plaintiff had a normal gait and normal strength (Tr. 28, citing Tr. 1217). However, the ALJ did not explain how that undermined the rest of the objective evidence in the record discussed above. . . .

ECF No. 9, pg. 12.

Plaintiff's argument is persuasive. Here, as outlined above, the ALJ summarized Plaintiff's statements and testimony, summarized the longitudinal objective medical record, and then concluded that Plaintiff's subjective statements and testimony were inconsistent with the record and Plaintiff's activities of daily living. The ALJ did not, however, as required under applicable legal standards, indicate which specific portions of Plaintiff's testimony and statements were undermined by which specific portions of the record. Though Defendant has provided numerous possible connections in the answering brief, the ALJ did not explicitly make those connections. The Court can only guess as to what rationale the ALJ employed and cannot substitute its own rationale, or that of the Commissioner, for analysis by the ALJ in the first instance.

For this reason alone, the Court finds that a remand is appropriate to allow the Commissioner to properly evaluate Plaintiff's subjective statements and testimony.

2. Reliance on Plaintiff's Activities of Daily Living

Plaintiff argues:

> The ALJ also discussed Plaintiff's daily activities as a reason to discount his allegations of pain and physical dysfunction (Tr. 27). The ALJ discussed that Plaintiff performed household chores, prepared simple meals, read, watched television, attended and volunteered at his church, drove, and socialized by using the telephone, via text messaging and video chat (Tr. 27, citing Tr. 307-317, 318-329). The ALJ concluded that "[t]his level of activity, though not conclusive as to any issue, is consistent with

> the residual functional capacity as found" (Tr. 27).
> While Plaintiff acknowledged engaging in the above activities, his description of those activities was not inconsistent with his allegations of physical dysfunction. Moreover, the mere fact that he was able to perform such activities was not consistent with the residual functional capacity including the ability to perform full-time work at the light exertional level, including lifting and carrying 20 pounds for up to one-third of the workday, stooping (bending) for up to one third of the workday and walking and standing up to four hours of the work day and sitting for 6 hours of the work day (Tr. 26). . . .
> Here, Plaintiff provided more details about his performance of these activities that the ALJ did not discuss. Plaintiff testified that although he does his own laundry, he does not bend over and instead uses a grabber to retrieve clothes out of the machine (Tr. 45). Although he can dress himself, his wife ties his shoes because he cannot bend over (Tr. 46). He explained that he makes himself meals four times a week, but those meals include toast, breakfast shakes, or sandwiches; and it takes him 5-10 minutes to make something to eat (Tr. 273). His wife and his mother helped with the housework, but he watered the lawn, which took 5-10 minutes, and otherwise, his family paid a lawn maintenance person (Tr. 273). He went grocery shopping once a week but only for 5-10 minutes (Tr. 274). He reached out to the pastor at his church for help with his anxiety (Tr. 401). He otherwise attended church but the record shows that he could not stand in church due to pain (Tr. 807). In sum, Plaintiff's activities did not bear a meaningful relationship to the activities required in full-time work, and the ALJ failed to consider Plaintiff's specific testimony regarding the limited nature of his activities.

ECF No. 9, pgs. 13-14.

Again, Plaintiff's argument is persuasive. Here, the ALJ stated generally that Plaintiff's activities of daily living are inconsistent with disability. In so doing, the ALJ noted that Plaintiff attends church, reads, watches sports on television, shops, pays bills, attends Bible study, drives, and socialized by way of telephone, text message, and video chat. The ALJ did not, however, comment on the limited ability of Plaintiff to engage in these tasks or that he needed assistance for many of the tasks listed. The ALJ thus failed to explain how Plaintiff's activities of daily living translate to the ability to sustain full-time competitive work.

For this additional reason, the matter should be remanded for a new hearing and administrative decision.

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Plaintiff's motion for summary judgment, ECF No. 9, be granted;

2. Defendant's cross-motion for summary judgment, ECF No. 13, be denied; and

3. The Commissioner's final decision be reversed and this matter be remanded for further proceedings consistent with these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 5, 2025

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

15